**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| TAMIRA BACON </br> 782 E. 249th Street </br> Euclid, Ohio 44123 </br> </br> Plaintiff, </br> </br> v. </br> </br> PNC BANK, NATIONAL ASSOCIATION </br> 300 Fifth Avenue </br> Pittsburgh, Pennsylvania 15222 </br> </br> **Serve Also:** </br> PNC BANK, NATIONAL ASSOCIATION </br> c/o Corporation Service Company </br> Statutory Agent </br> 3366 Riverside Drive, Suite 103 </br> Upper Arlington, Ohio 43221 </br> </br> -And- </br> </br> STEFANIE DAVY </br> 740 E. 250th Street </br> Euclid, Ohio 44132 </br> </br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO. </br> </br> JUDGE: </br> </br> </br> **COMPLAINT FOR DAMAGES</br>AND REINSTATEMENT** </br> </br> **JURY DEMAND ENDORSED</br>HEREIN** |

Plaintiff Tamira Bacon, by and through her undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES**

1. Plaintiff Tamira Bacon is a natural person and resident of the City of Euclid, County of Cuyahoga, State of Ohio.

2. Defendant PNC Bank, National Association ("PNC") is a foreign, for-profit corporation organized under the laws of the Commonwealth of Pennsylvania, with a principal place of business located at 285 Babbitt Road, Euclid, Ohio 44123.

3. Upon information and belief, Defendant Stefanie Davy is a natural person and resident of the City of Euclid, County of Cuyahoga, State of Ohio.

## JURISDICTION & VENUE

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Bacon is alleging a federal law claim under the Family and Medical Leave Act ("FMLA"), 29 U.S.C § 2601, *et seq.*

5. This Court has supplemental jurisdiction over Bacon's state law claims pursuant to 28 U.S.C. § 1367, as Bacon's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

6. This Court has personal jurisdiction over PNC pursuant to Ohio Revised Code Section 2307.382(A)(1), as PNC has and continues to transact business in the State of Ohio.

7. This Court has personal jurisdiction over Davy pursuant to Federal Rule of Civil Procedure 4(k), as Davy is subject to the jurisdiction of a court of general jurisdiction located within this federal judicial district.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in Cuyahoga County, Ohio, which is encompassed by this federal judicial district.

9. Within 300 days of the conduct alleged below, Bacon filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2020-00671, against PNC.

2

10. Bacon dually filed the charge with the EEOC and the Ohio Civil Rights Commission.

11. On or about November 16, 2020, the EEOC issued and mailed a Notice of Right to Sue letter to Bacon regarding the Charge of Discrimination brought against PNC.

12. Bacon received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1), a copy of which has been attached hereto as Plaintiff's Exhibit 1.

13. Bacon properly exhausted her administrative remedies pursuant to 29 C.F.R. 1614.407(b) and R.C. § 4112.052.

14. Bacon originally filed a Complaint against Defendants within 90 days of the issuance of the Notice of Right to Sue letter, on or about February 5, 2021, in the matter docketed as *Tamira Bacon v. PNC Bank, N.A., et al.*, United States District Court for the Northern District of Ohio Case No. 1:21-cv-00310-JPC.

15. Bacon voluntarily dismissed her claims against Defendants in the above-referenced matter without prejudice on or about August 18, 2021.

16. Bacon has refiled this Complaint within one year of dismissing her claims without prejudice, as required under Fed. R. Civ. P. 41.

## **FACTS**

17. Bacon is a former employee of PNC.

18. Bacon is African American.

19. At all times relevant herein, Davy was a manager and/or supervisor of PNC who acted directly or indirectly in the interest of PNC.

20. Davy did not participate in the decision to hire Bacon.

21. Davy is Caucasian.

22. Bacon worked for PNC as a Sales Service Associate.

23. Bacon began her employment at PNC on or about October 12, 2012.

24. On or about February 6, 2019, Bacon was transferred to PNC's Shoregate Branch in Euclid, Ohio.

25. Almost immediately after her transfer to the Shoregate Branch, Bacon began experiencing discrimination and harassment.

26. Two days after her transfer, Bacon became aware that Jill Delost, a Caucasian colleague, was taking clients from Bacon, and cancelling Bacon's appointments.

27. Delost was cancelling Bacon's appointments with clients and rescheduling them in an effort to prevent Bacon from meeting with her clients.

28. On or about February 25, 2019, Bacon complained to Davy, explaining that Delost was purposefully interfering with Bacon's client relationships.

29. Davy informed Bacon that she would have a discussion with Delost and address her behavior.

30. In response to Bacon's report of racial discrimination, Davy filed a complaint against Bacon.

31. The same day, Bacon received a call from PNC's Human Resources Department.

32. Human Resources informed Bacon that they were investigating her conduct, not Delost's.

33. Davy contacted Human Resources and falsely accused Bacon of doing business with her friends and family.

34. Davy did not contact Human Resources regarding Delost's behavior.

35. After investigating Bacon, PNC concluded that the accusations of doing business with friends and family were baseless.

36. Neither Davy nor Human Resources followed up or investigated Bacon's complaint against Delost.

37. Bacon was never interviewed about Delost.

38. Upon receiving the conclusions of Human Resources, Davy again filed another complaint against Bacon.

39. The second complaint alleged that Bacon was incorrectly entering clients' driver's license information into PNC's system.

40. After another investigation, PNC again found that Davy's accusations were baseless.

41. During the Spring of 2019, Davy took extended medical leave.

42. While Davy was out on leave, Delost and another Cucasian employee, Rachel Erickson, began harassing Bacon based on her race.

43. Delost and Erickson would make comments to Bacon when African American clients would enter the branch.

44. Delost and Erickson would tell Bacon "that's all you," implying Bacon should be the one to meet with African American clients because she is an African American.

45. Delost and Erickson also subjected Bacon to suggestive questions about her race.

46. Delost and Erickson asked Bacon repeatedly if she would "date men outside of her own race."

47. Delost and Erickson followed up these inappropriate comments by saying that "white men take better care of their children than black men."

48. Erickson took the racial comments even further, telling Bacon to "not be ghetto" and to stop "walking like a slave" throughout the branch.

49. These racist comments deeply offended Bacon.

50. None of PNC's supervisors investigated these comments.

51. PNC did not interview Bacon.

52. PNC did not obtain a written statement from Bacon.

53. PNC did not interview Delost.

54. PNC did not obtain a written statement from Delost.

55. PNC did not interview Erickson.

56. PNC did not obtain a written statement from Erickson.

57. The only time Human Resources contacted Bacon was when they were investigating the baseless accusations Davy made against Bacon.

58. During the Summer of 2019, the Shoregate Branch became short-staffed.

59. Bacon was reassigned to serve as a Teller.

60. When Bacon was reassigned, Delost was assigned all of Bacon's clients.

61. Despite having to fulfill the duties of a Teller and a Personal Banker, Bacon met all of her productivity goals.

62. On or about June 19, 2019, Bacon's 16-year-old daughter was hospitalized due to a mental health issue.

63. Bacon's daughter suffers from a psychological disability.

64. Because Bacon's daughter was hospitalized, she was late to work on June 19, 2019.

65. When Bacon tried to explain to Davy why she was late on June 19, 2019, Davy responded that Bacon "should do a better job of taking care of your daughter's mental health."

66. Unable to leave her daughter home alone, Bacon took off work on June 28 and June 29, 2019 to care for her daughter.

67. Bacon had already scheduled June 28 and June 29 off for doctor's appointments, but missed her own doctor's appointments to care for her disabled daughter.

68. Despite being informed of Bacon's situation, no one at PNC informed Bacon of her FMLA rights during her daughter's serious health issues.

69. PNC is a covered employer under the FMLA.

70. As of June 2019, Bacon worked for PNC for at least 12 months.

71. As of June 2019, Bacon had at least 1,250 hours of service for PNC during the previous 12 months.

72. As of June 2019, Bacon qualified for FMLA leave, as related to her childcare obligations.

73. In July 2019, Bacon learned that she could apply for FMLA, and that her protections would be retroactive and cover any absences she had to care for her daughter.

74. Bacon applied for FMLA leave, requesting that her leave apply retroactively to a "tardy" attendance mark from June 19, 2019, as well as the June 28 and June 29 absences.

75. Around the same time as the FMLA application, Bacon applied for a transfer to other PNC branches in order to escape the hostile environment at Shoregate.

76. Bacon applied for a position at the South Euclid, Ohio branch of PNC.

77. Bacon interviewed at the South Euclid branch, and believed that the interview went well and that the transfer would be effectuated.

78. When Bacon returned to the Shoregate branch after her South Euclid interview, Bacon was accosted by Davy.

79. Davy asked Bacon: "why don't you want to work here anymore?"

80. Bacon simply stated that she wanted a transfer and offered no additional comments.

81. Immediately following this conversation, Bacon was again called by Human Resources.

82. Yolanda Adams, a Human Resources representative, told Bacon that Davy made a request that Human Resources investigate Bacon for "ethics violations" related to her absences in June 2019.

83. On or about July 25, 2019, Bacon was informed that she was being terminated.

84. Adams told Bacon that PNC was concluding that Bacon "lied" about her reasons for being absent.

85. PNC did not request documentation from Bacon regarding her time off, in order to allow Bacon to refute Davy's, and now PNC's, accusations.

86. PNC did not consider that Bacon's June absences were covered by her application for FMLA leave.

7

87. PNC terminated Bacon five days after her application for FMLA leave, specifically for her FMLA-covered absences.

88. PNC terminated Bacon due to her repeated complaints about racial discrimination, Davy's ongoing complaints to Human Resources about Bacon, and her requests for FMLA leave.

89. As a direct and proximate result of Defendants' conduct, Bacon has suffered and will continue to suffer damages.

## COUNT I: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

90. Bacon restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

91. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

92. PNC is a covered employer under the FMLA.

93. During her employment, Bacon qualified for FMLA leave.

94. During her employment, Bacon attempted to request FMLA leave by asking Defendants if she qualified to take FMLA leave.

95. Defendants failed to properly advise Bacon of her rights under the FMLA.

96. Defendants unlawfully interfered with Bacon's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

97. PNC 's act of writing Bacon up during her FMLA leave violated and interfered with Bacon 's FMLA rights.

98. Defendants violated section 825.300(c)(1) of the FMLA and interfered with Bacon 's FMLA rights when Defendants did not honor Bacon's approved use of FMLA leave.

99. As a direct and proximate result of Defendants' conduct, Bacon is entitled to all damages provided for under 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## COUNT II: RETALIATION IN VIOLATION OF THE FMLA

100. Bacon restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

101. During her employment, Bacon applied for FMLA leave.

102. After Bacon attempted to utilize her qualified FMLA leave, Defendants retaliated against her.

103. Defendants retaliated against Bacon by terminating her employment.

104. Defendants willfully retaliated against Bacon in violation of 29 U.S.C. § 2615(a).

105. As a direct and proximate result of Defendants' wrongful conduct, Bacon is entitled to all damages provided for under 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT III: RACE DISCRIMINATION

106. Bacon restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

107. Throughout her employment, Bacon was fully competent to perform her essential job duties.

108. Defendants treated Bacon differently than other similarly situated employees based on her race.

109. Defendants violated R.C. § 4112.02(A) *et seq.*, by discriminating against Bacon due to her race.

110. On or about July 25, 2019, PNC terminated Bacon without just cause.

111. At all times material herein, similarly situated non-African-American employees were not terminated without just cause.

112. Defendants terminated Bacon based on her race.

113. Defendants violated R.C. § 4112.01 *et. seq.* when they terminated Bacon based on her race.

114. Bacon suffered emotional distress as a result of Defendants' conduct, and is entitled to emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

115. As a direct and proximate result of Defendants' conduct, Bacon has suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT IV: RETALIATORY DISCRIMINATION

116. Bacon restates each and every foregoing paragraph of this Complaint, above, as if it were fully rewritten herein.

117. As a result of the Defendants' discriminatory conduct described above, Bacon complained about the racial discrimination she was experiencing.

118. Subsequent to Bacon's discrimination complaints, Davy decided to file baseless complaints against Bacon with PNC's Human Resources Department.

119. PNC never investigated Bacon's complaints, but rather engaged in repeated investigations against Bacon in retaliation for her protected complaints regarding race discrimination.

120. PNC took no disciplinary action against Davy, Delost, or Erickson for their discriminatory behavior, further emboldening them to continue this behavior.

121. Defendants' actions were retaliatory in nature based on Bacon 's opposition to unlawful discriminatory conduct.

122. Pursuant to R.C. §4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section[.]"

123. Bacon suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

124. As a direct and proximate result of Defendants' retaliatory discrimination against and termination of Bacon, Bacon has suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Bacon demands from Defendants the following:

(a) Issue an order requiring PNC to restore Bacon to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Bacon for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Bacon's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Kevin A. Buryanek*_____
Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
**SPITZ, THE EMPLOYEE'S FIRM**
25825 Science Park Drive, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
daniel.dubow@spitzlawfirm.com
kevin.buryanek@spitzlawfirm.com

*Attorneys for Plaintiff Tamira Bacon*

# **JURY DEMAND**

Plaintiff Tamira Bacon hereby demands a trial by jury by the maximum number of jurors permitted.

*/s/ Kevin A. Buryanek*_____
Daniel S. Dubow (0095530)
Kevin A. Buryanek (0099300)
**SPITZ, THE EMPLOYEE'S FIRM**